## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS MACCHIO<br>435 Green Street<br>Lehighton, PA 18235<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BERTIL ROOS ROAD RACING, LLC<br>17047 Beeline Highway<br>Jupiter, FL 11478<br><br>and<br><br>IRGSE RACING, LLC<br>888 7th Avenue<br>New York, NY 10106<br>,<br>　　　　　Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff Dennis Macchio ("Plaintiff" or "Macchio"), by and through counsel, for its Complaint against Defendants Bertil Roos Road Racing, LLC ("Bertil Roos") and IRGSE RACING, LLC ("IRG") (collectively "Defendants") states as follows:

## **INTRODUCTION**

1.　　This action for declaratory, injunctive and monetary relief is brought as a measure of last resort to prevent the theft of equity from an individual by a private equity group.

2.　　Plaintiff Dennis Macchio is a lifelong race car driver and instructor. Since 1983, Macchio has spent his life in race cars, both competing himself and teaching others how to drive and compete safely.

3.　　In 1999, Macchio purchased Bertil Roos Racing School. Operating under the motto "Do it right, or don't do it at all," Macchio applied his decades of experience as a driver,

track owner, manager, designer, team owner, instructor and coach to build the finest and most successful racing schools in the world.

4. In 2017, after nearly two decades of operation, Macchio was approached by Defendant IRG, a private equity-backed conglomerate with a portfolio of various racetracks and related assets, which expressed an interest in partnering with Macchio on a joint venture.

5. Intrigued by the opportunity and looking to expand the reach of the already-successful Bertil Roos Racing School, Macchio agreed to enter into a joint venture with IRG to form a new company, Bertil Roos Road Racing, LLC.  As consideration for folding Bertil Roos Racing School into the new company, Macchio would own 30% of the new Bertil Roos and serve as its President, and IRG would own 70%.

6. The deal also included call and put options, which would allow Macchio to sell his interest in Bertil Roos for $350,000 or fair market value, whichever was greater at the time

7. Although IRG promised Macchio the world, including open communication and substantial financial and marketing support, from the outset, IRG began undermining Bertil Roos in any way it could, including hiding documents from Macchio, cramming down IRG's expenses on to Bertil Roos balance sheet in order to undercut Bertil Roos's value and profitability, and engaging in nepotism harmful to Bertil Roos's marketing efforts and customer relationships.

8. Nevertheless, in 2018, Macchio exceeded the revenue targets set by IRG by more than 50%, earning a $25,000 bonus, which was not timely paid.

9. Despite this, Macchio was unceremoniously terminated for cause on July 23, 2019, with Bertil Roos manufacturing a baseless justification for his termination.

10. By terminating Macchio for cause, Bertil Roos triggered a provision in the Operating Agreement under which they had the Board of Directors "revalue" the company at

$10,000, arbitrarily reducing the value of Macchio's equity by more than 99%, from at least $350,000 to $3,000.

11. At the same time, Bertil Roos has threatened to enforce Macchio's noncompete agreement if he obtains another job in racing.

12. In short, IRG and Bertil Roos have thrown Macchio out of his company, stolen his equity and are preventing him from earning a living.

13. Macchio, an individual, has been left with no choice but to obtain counsel, expend substantial resources and file this lawsuit in a last ditch effort to preserve his equity in the company that he built.

## THE PARTIES

14. Plaintiff Dennis Macchio is an individual residing at 435 Green Street, Lehighton, PA, 18235 and is a citizen and resident of the Commonwealth of Pennsylvania.

15. Defendant Bertil Roos Road Racing, LLC is an organization incorporated and existing under the laws of Delaware with a principle place of business at 17047 Beeline Highway, Jupiter, Florida 33478.

16. Defendant IRGSE Racing, LLC is an organization incorporated and existing under the laws of Delaware with a principle place of business at

## JURISDICTION

17. This Court has subject matter jurisdiction over this action pursuant to federal diversity jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse of citizenship and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

18. This Court has personal jurisdiction over the Defendants due to Defendants' voluntary ties and connections to the Commonwealth of Pennsylvania, and because the contracts at issue in this action were negotiated in Pennsylvania.

## VENUE

19. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) & (b)(3) because the Agreements at issue were negotiated in this judicial district; a substantial part of the events, omissions, or property at issue occurred or is located in this judicial district; and/or both Defendants are subject to the personal jurisdiction of this Court with respect to this action.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS

### Dennis Macchio and Bertil Roos Racing

20. After a brief career in marketing, Dennis Macchio entered the world of competitive racing in 1986, when he founded Hot Shoe Racing, which specialized in racetrack management, race team consulting and driver development.

21. In 1999, Macchio founded Bertil Roos Racing School, which focused on training all levels of aspiring racers, emphasizing safety and accessibility above all.

22. Under Macchio's leadership and guidance, and the school's adherence to its motto, "Do it right, or don't do it at all," the Racing School grew into one of the finest and most successful in the world.

23. Trading on his relationships with tracks and vendors built over decades in the industry, Macchio was able to negotiate favorable pricing and terms, adding to the Racing School's profitability and value.

24. Despite several economic downturns between 1999 and 2017, which forced the closure or bankruptcy of many competing schools and other companies in the racing industry, Macchio's Racing School operated uninterrupted and without mass layoffs during this time.

25. As a result, Macchio's Racing School was well-positioned for continued success.

## The Formation of the "Joint Venture" With IRG

26. Undoubtedly and unsurprisingly attracted by the prolonged and continuous success of Macchio's Racing School and Macchio's own experience and reputation in the industry, Defendant IRG approached Macchio in 2017 concerning a joint venture.

27. IRG is a New York-based, private-equity backed organization that owns a portfolio of race tracks.

28. Macchio, seeking to grow his school and expand on its successes, saw IRG's offer as an opportunity to bring racing to a wider audience, provide security for his employees, and protect both his legacy and his equity.

29. Macchio was 65 years old at this time, and saw the opportunity IRG was offering as a way to ensure that he would have adequate resources for retirement.

30. IRG's President and Chief Executive Officer, Lou Partenza, presented the opportunity as one that would fill all of Macchio's requirements.

31. To wit, IRG would provide financial backing and allow Macchio to continue to run the joint venture as he saw fit.

32. In October of 2017, Macchio and IRG agreed to enter into a joint venture.

33. Under the terms of the joint venture, a new company, Bertil Roos Road Racing, LLC, ("Bertil Roos") would be created, and Macchio would be its president.

34. To memorialize the terms of Macchio's role as president, Bertil Roos presented Macchio with an offer letter, under which Macchio would receive a salary of $165,000 per year and a 30% Membership Interest in Bertil Roos as "additional compensation for your employment." *See* Exhibit A at p.1.

35. According to the terms of the offer, Macchio was given a seat on the Board of Member Representatives of Bertil Roos. *Id.*

36. The terms of the offer also included a "Term" clause, under which the terms of Macchio's employment were noted as being "at will." *Id.*

37. No mention is made of in the offer letter of a caused based termination, or the impact that such a termination could or would have on Macchio's employment compensation.

38. The offer letter was drafted by Bertil Roos, and Macchio had no role in its creation.

39. Macchio executed the offer letter on October 29, 2017. *Id.* at 5

40. The parties also executed a 53-page Amended and Restated Operating Agreement for Bertil Roos on October 20, 2017. *See* Exhibit B.

41. The operating agreement purported to set forth the "regulations, terms and conditions of the operation of the Company." *Id.* at 1.

42. The Operating Agreement memorialized Macchio's seat on the Board of Directors of the company. *Id.* at ¶ 7.1(b).

43. According to the terms of the Operating Agreement, "Dennis [Macchio] will serve as his own Member Representative until his earlier death, disability, resignation or removal or his Percentage Interest decreasing below 10%..." *Id.*

44. According to the terms of the Operating Agreement, "Each Member Representative will discharge his or her duties as a Member Representative in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner he or she reasonably believes to be in the best interests of the Company." *Id.* at ¶ 7.1(d).

45. The Operating Agreement also contained "Call" and "Put" Options governing the repurchase of Membership Interests.

46. The Call Option provided as follows:

> (a) IRG (or its Affiliates by assignment IRG (or its Affiliates by assignment from IRG or other designees) will, in addition to the rights and options otherwise provided in ARTICLE IX, at any time after the 2nd anniversary of the date of this Agreement, have the exclusive right and option (the "IRG Call Option"), to be exercised by delivering a written notice (a "Call Notice") to Dennis, to purchase all of the Membership Interest of Dennis at the applicable purchase price (determined pursuant to Section 9.6) as of the date of the Call Notice.
>
> (b) Where the IRG Call Option is exercised, Dennis will, within 30 days after his receipt of the Call Notice, deliver (and absent such delivery will be deemed hereby to have delivered) to IRG an assignment of all their right, title and interest in or to its Membership Interests, which assignment will be without warranty or representation, except that Dennis will represent (or hereby be deemed to represent) to IRG that he is the owner of all the Membership Interest so assigned and that such Membership Interest is free and clear of all liens and encumbrances. Concurrently therewith, IRG will deliver to Dennis the consideration for his Membership Interest.

*Id.* at ¶9.4.

47. The Put Right provides as follows:

> (a) Right to Sell. Dennis will have the right (the "Put Right"), subject to the conditions in Section 9.8(b) below, to elect to sell to the Company all, but not less than all, of his Membership Interest held by Dennis and his permitted transferees at a price equal to $350,000.00 (subject to reduction on a pro rata basis if Dennis transfers any of his Membership Interest) (the "Put Purchase Price") any time after the 3rd anniversary of this Agreement; provided, however, that Dennis may not exercise the Put Right during any period that an event has occurred that causes Dennis' Membership Interest to be subject to purchase or sale under Sections 9.3, 9.4 or 9.5, as applicable.
>
> (b) Conditions. Dennis may exercise the Put Right only if (i) Dennis has not been terminated by the Company or its Affiliates

7

>    for Cause; (ii) Dennis has not resigned from the Company; and (iii)
>    neither Dennis nor Bertil Roos are in material breach under this
>    Agreement, the Purchase Agreement, the Protective Covenants
>    Agreement, or any other agreement to which IRG (or its Affiliates)
>    and Dennis (or his Affiliates) are a party.

*Id.* at ¶9.8.

48. The Parties also executed a Subscription Agreement on October 20, 2017, *see* Exhibit C, and a Contribution and Asset Purchase Agreement on October 19, 2017. *See* Exhibit D. Both documents were drafted by Bertil Roos and/or IRG.

### **IRG Begins Its Campaign To Force Macchio Out**

49. Despite its promises, immediately following the close of the deal, IRG and Lou Partenza launched an effort to force Macchio out of Bertil Roos and to obtain Macchio's 30% interest for IRG.

50. When IRG and Partenza announced the terms of the deal between Macchio and IRG regarding the formation of Bertil Roos, IRG and Partenza announced the deal as IRG's "acquisition" of Macchio's racing school.

51. This announcement caused great concern and significant difficulties with partners, vendors and tracks, which had all been dealing with Macchio as owner for years.

52. Several parties reached out to Macchio to voice those concerns and threatened to pull their business from Bertil Roos if Macchio was no longer in control.

53. Macchio did his best to assure them that the agreement was a partnership, not an acquisition,

54. As a result of this announcement, IRG effectively handicapped Bertil Roos before it could even get started.

55. Unfortunately, this initial event was a harbinger of things to come, and indicative of IRG's plan to cripple Bertil Roos.

56. As part of its plan to reduce the accounting value of Bertil Roos, IRG began forcing expenses onto IRG's books.

57. By way of example, when Bertil Roos needed a truck to transport cars to tracks, IRG promised Macchio that he could use a spare used truck for no cost.

58. Later, Macchio discovered that IRG had charged Bertil Roos $60,000 for that truck, a figure in excess of what Bertil Roos could have spent to acquire a new truck.

59. IRG and Partenza have likewise overcharged Bertil Roos for advertising and marketing expenses.

60. Partenza also forced Bertil Roos to hire his fresh-out-of-college daughter as Bertil Roos's director of Marketing, a position for which she was unqualified, at a rate far above market. Although no fault of her own, her inexperience in the industry and with marketing in general cost Bertil Roos significant relationship capital.

61. To prevent Macchio from discovering these efforts, IRG and Partenza refused to share with Macchio the full financials of Bertil Roos.

62. Even now, Macchio has not been provided with the documents necessary to determine the extent of the financial malfeasance by IRG and Partenza.

63. At the same time IRG and Partenza were saddling Bertil Roos with expenses, they were making it difficult for Macchio to run Bertil Roos.

64. For example, IRG failed to maintain minimum balances in Bertil Roos expense accounts, causing Bertil Roos to default on obligations to vendors, while at the same time instructing Macchio not to pay those vendors via company credit cards.

65. IRG also promised Macchio that Bertil's Roos's fleet of vehicles would be expanded so that the school could be properly and safely run.

66. Despite this, IRG never provided Bertil Roos with these cars or the capital necessary to obtain them directly.

67. At the same time, Partenza was undermining Macchio's relationship with his own employees.

68. By forcing expenses down on to Bertil Roos's books and undermining Macchio's effectiveness as president, IRG and Partenza artificially suppressed Bertil Roos's profitability, and thus its fair market value.

69. Nevertheless, Macchio was able to overcome the difficulties caused by IRG and Partenza and shepherded Bertil Roos to a successful 2018.

70. In fact, Macchio was able to hit and exceed his financial targets, set by IRG, by more than 50%.

71. As a result, Macchio earned a $25,000 bonus under the terms of his Agreements.

72. This bonus was withheld by IRG and Bertil Roos without justification, for approximately six months.

### IRG Begins Its Campaign To Force Macchio Out

73. In early 2019, IRG and Partenza began the final stages of their plan to force Macchio out of Bertil Roos and take his interest in the company for IRG.

74. By this point, Partenza had become openly hostile to Macchio, including in front of Bertil Roos employees and customers.

75. Often, Partenza would address Bertil Roos employees directly and request that they communicate with him rather than Macchio, despite Macchio's role as president.

76. Partenza also made statements to employees that Macchio "would never be back at work at Bertil Roos," creating uncertainty and division within these employees.

77. Partenza and IRG also limited and then eliminated the ability of Macchio and other Bertil Roos employees to write checks to vendors, harming those relationships and making it nearly impossible to operate the business.

78. In May of 2019, Partenza began openly threatening to fire Macchio.

79. However, under the terms of the Operating Agreement and the Offer Letter, if Partenza fired Macchio without cause, Macchio would eventually be able to sell his interest in Bertil Roos (a) $350,000 or (b) the sum that is the product of 4.5 multiplied by the Company's EBITDA for the previous 12 months multiplied by the percentage Membership Interest.

80. Likewise, IRG would be required to pay at least $350,000 to obtain Macchio's 30% membership interest.

81. However, the Operating Agreement also provided that "the purchase price for Dennis' Membership Interest will be equal to the Fair Value of his Membership Interests in the event Dennis is terminated by the Company or its Affiliates for Cause." *See* Exhibit B at ¶9.6(a).

82. "Fair Value," as defined in the Operating Agreement, means: "the amount determined by the Board at which a Membership Interest would change hands between a willing seller and a willing buyer when neither is under compulsion and when both have reasonable knowledge of the relevant facts."

83. Thus, in order to avoid paying Macchio at least $350,000 for his Membership Interest in Bertil Roos, IRG and Partenza would need to (a) fire Macchio for cause, (b) have the Board of Directors –absent Macchio – revalue the Company at some nominal figure; and (c) exercise IRG's right of repurchase, triggered by Macchio's termination, based on whatever lower number IRG decided on for Bertil Roos's "value."

84. This is precisely what IRG and Partenza did.

**IRG and Partenza Fire Macchio from Bertil Roos**

85. First, on July 23, 2019, Partenza and IRG fired Macchio, purportedly for cause. *See* Exhibit E.

86. "Cause," under the terms of the Operating Agreement, is defined as:

> (i) Dennis' repeated failure to perform substantially his duties as an employee of or service provider to the Company or any of its Affiliates, which failure has continued unremedied for more than 30 days after the Company has provided written notice thereof; (ii) Dennis' dishonesty, incompetence, willful misconduct, gross negligence, or breach of fiduciary duty; (iii) any conviction of, or the entering of a plea of guilty or nolo contendere to, a crime that constitutes a felony, or any willful or material violation by Dennis of any federal, state or foreign securities laws; (iv) any conviction of any other criminal act or act of material dishonesty, disloyalty or misconduct by Dennis that has a material adverse effect on the property, operations, business or reputation of the Company or any of its Affiliates; (v) the unlawful use (including being under the influence) or possession of illegal drugs by Dennis on any premises of the Company or any of its Affiliates while performing any duties or responsibilities with the Company or any of its Affiliates; (vi) the violation by Dennis of any other rule or policy of the Company or its Affiliates, provided, however, to the extent such violation is wholly curable, such violation has continued unremedied for more than 30 days after the Company has provided written notice thereof; or (vii) the breach by Dennis of any written covenant or agreement with the Company or any of its Affiliates not to disclose any confidential information or not to compete or interfere with the Company or any of its Affiliates.

*See* Exhibit B, "Definitions."

87. As the basis for "cause," IRG and Partenza pointed the payment of a prior debt of Macchio's racing to Pocono raceway by Bertil Roos at Macchio's direction. However, IRG and Partenza were aware of this payment, which occurred nearly 18 months early, in early 2018, and that it was part of an arrangement whereby Bertil Roos would receive substantially reduced track fees for many years.

88. Most importantly, IRG and Partenza were aware of this payment and arrangement at the time it was entered into more than a year prior, and voiced no objection until Macchio's termination.

89. Likewise, IRG and Partenza purport to find "cause" for Macchio's termination in the alleged failure to transfer cash from the operation of Macchio's racing school to Bertil Roos in connection with the closing. Even if true, which Macchio disputes, these events concern the interpretation of the operating agreement and relate to the closing of the joint venture nearly two years prior. As these circumstances do not Macchio's role as president of Bertil Roos, they cannot form the basis for "cause" as defined by the Operating Agreement.

90. Beyond these stale events, IRG and Partenza attempt to base their cause determination on standard business performance disputes, like the payment of bonuses to employees, treatment of sales and payroll taxes, charges for supplies, phone usage and print jobs, and the purchase of cars, and disputes over financial statements. *See* Exhibit E at p.2.

91. Tellingly, Macchio never received previous written notice of any of these issues.

92. Equally tellingly, Macchio was not requested or permitted to attempt to cure any of these alleged "breaches."

93. Indeed, on same day that IRG and Partenza brought these alleged issues to Macchio's attention, he was terminated without cause and told to clean out his office.

94. IRG and Partenza made sure to note that "Pursuant to Section 9.6(a) of the Operating Agreement and in light of the termination of your employment for Cause and your material breach of the Asset Purchase Agreement, the aggregate purchase price to be paid for your Membership Interests is equal to the "Fair Value" of such Membership Interests as determined by the Board. The Board is in the process of determining the Fair Value of your Membership Interests and will inform you of the purchase price and payment terms in due course."

95. In other words, having fired Macchio for cause, Partenza and IRG would not decide what they would pay Macchio for his 30% interest in Bertil Roos, and would let him know "in due course."

96. No repurchase price was provided to Macchio at that time.

97. Lastly, Partenza notified Macchio that IRG expected him to remain bound by his restrictive covenants.

98. Despite the efforts by Partenza and IRG to manufacture "cause" for Macchio's termination, no such justification existed at the time of Macchio's termination.

99. In terminating Macchio for cause, IRG breached the Operating Agreement.

### IRG "Revalues" Bertil Roos at $10,000, and Attempts to Repurchase Macchio's Interest at a 99% Reduction In Price

100. Having been terminated from Bertil Roos and unable to earn a living in his chosen industry due to IRG's threats to enforce restrictive covenants, Macchio received a letter from Partenza and IRG after business hours on August 21, 2019. *See* Exhibit F.

101. The letter made reference to Macchio's previous termination and the election of Bertil Roos to repurchase Macchio's 30% interest. *Id.*

102. For the first time, however, IRG and Partenza informed Macchio that the Board had "revalued" Bertil Roos at $10,000.

103. Thus, for the first time, IRG and Partenza informed Macchio that they were forcing him to sell his 30% interest in Bertil Roos for $3,000, a more than 99% reduction in the minimum purchase price set by the Operating Agreement.

104. IRG and Partenza demanded that Macchio execute an Assignment Agreement conveying his Membership Interest to Bertil Roos by 3pm the following afternoon.

14

105. In other words, IRG and Partenza gave Macchio less than a day after informing him for the first time that it had reduced the value of his Membership Interest by 99% to turn that Interest over to Bertil Roos and IRG.

106. The notice provided in the July 23 letter is inadequate as a "Repurchase Right Notice" as defined by the Operating Agreement.

107. IRG and Partenza provided no information about the Board's decision to revalue Bertil Roos, the information it considered in doing so, the industry comparators it used, or any other metrics relied upon by the Board in reaching that figure.

108. Macchio was not consulted by the Board in their effort to "value" Bertil Roos.

109. By any objective measurement, Bertil Roos is worth far in excess of $10,000.

110. The Board's "revaluation" of Bertil Roos is unsupported, unjustified and a breach of the operating agreement.

111. On August 22, 2019, counsel for Macchio wrote to counsel for IRG, objecting to the lack of notice concerning the valuation and repurchase price of Macchio's membership interest, the unjustified and unsupported revaluation of the company, and the unnecessary demand that Macchio execute an assignment in less than 24 hours. *See* Exhibit G.

112. No response was provided.

113. By failing to provide adequate notice to Macchio concerning IRG's efforts to repurchase his Interest, by unilaterally revaluing his Interest without justification or support, and by forcing the conveyance of that Interest to Bertil Roos without Macchio's consent, IRG and Bertil Roos are in breach of their Agreements with Macchio.

114. Now unable to work in his chosen field, and with the equity built over two decades in jeopardy, Macchio is left with no alternative but to expend resources in bringing this lawsuit.

## COUNT I
### Declaratory Judgment
### (Against Bertil Roos)

115. Macchio repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

116. Courts have been historically reluctant to enforce contracts that place restraints on trade or hinder the ability of an individual to earn a living.

117. As restraints of trade, covenants restricting the ability of an individual to work are universally disfavored.

118. When an individual is terminated by an employer, Courts in equity are loathe to allow that same employer to both discard an employee as worthless *and* restrict that employee from competing.

119. Bertil Roos involuntarily terminated the employment of Macchio.

120. In so doing, Bertil Roos forfeited its right to enforce contractual covenants against Macchio that would prevent him from obtaining a job in his chosen field.

121. Furthermore, in unilaterally "revaluing" Macchio's Membership Interest in Bertil Roos at $3,000, Bertil Roos eliminated the consideration paid to Macchio in exchange for his agreements not to compete.

122. Despite the above, Bertil Roos has informed Macchio that it intends to attempt to enforce his noncompete agreements, and has threatened to do so.

123. Thus, an actual controversy exists between Macchio and Bertil Roos concerning the restrictive covenants.

124. Under these circumstances, it would be grossly inequitable to permit Bertil Roos to terminate Macchio's employment and devalue his Membership Interest to nearly nothing, all while preventing him from working in his chosen field.

125. Under these circumstances, Bertil Roos has no legitimate interest in enforcing the restrictive covenants.

126. Macchio is entitled to a declaration that the restrictive covenants in the Operating Agreement and the Offer Letter are unenforceable and unnecessary to protect Bertil Roos's legitimate interests, and that he is free to engage in competitive employment.

## COUNT II
### Breach of Contract
### (Against All Defendants)

127. Macchio repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

128. As set forth in detail above, each of the Defendants entered into a lawful and enforceable Agreement with Macchio. *See* Exhibits A and B.

129. In failing to timely pay Macchio's $25,000 bonus, Defendants breached the Offer Letter.

130. In terminating Macchio for cause, Defendants breached the Operating Agreement and the Offer.

131. In failing to notify Macchio of the grounds for his alleged termination and in failing to allow him a period of time to cure any alleged breaches, Defendants breached the Operating Agreement.

132. In unilaterally "revaluing" Bertil Roos, such that Macchio's Membership Interest was reduced in value from at least $350,000 to $3,000, Defendants breached the Operating Agreement.

133. In failing to provide an adequate Repurchase Event Notice to Macchio, Defendants breached the operating agreement.

134. In unilaterally and without Macchio's consent deeming Macchio's Membership Interest in Bertil Roos to be assigned to Bertil Roos, Defendants breached the operating agreement.

135. Macchio has adhered to and performed any and all of its obligations under the Operating Agreement and Offer Letter.

136. As a result of Defendants' breaches, Macchio has suffered actual damages.

137. As a result of Defendants' breaches, Defendants have been unjustly enriched.

138. As a result of Defendants' breaches, Macchio has incurred expenses and attorneys' fees.

## COUNT III
### Breach of Duty of Good Faith and Fair Dealing
### (Against All Defendants)

139. Macchio repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

140. As set forth in detail above, each of the Defendants entered into a lawful and enforceable Agreement with Macchio. *See* Exhibits A and B.

141. A party to a contract must not act in bad faith, dishonestly, or with improper motive to destroy or injure the right of the other party to receive the benefits or reasonable expectations of the contract.

142. As described above, Defendants have breached their duty of good faith and fair dealing to Macchio by, *inter alia*, terminating Macchio without just cause, unilaterally devaluing Macchio's Membership Interest by at least 99% and failing to provide adequate notice to Macchio of the unilateral repurchase of his Interest.

143. Defendants have further breached their duty of good faith and fair dealing by undermining Macchio's right to receive the benefits due to him under the contracts by engaging in a scheme to obtain Macchio's Membership Interest without fair consideration.

144. As a result of Defendants' breaches, Macchio has suffered actual damages.

145. As a result of Defendants' willful, wanton and extreme conduct, Macchio is entitled to punitive damages.

## COUNT IV
### Pennsylvania Wage Payment and Collection Law
### (Against Bertil Roos)

146. Macchio repeats, realleges and incorporates by reference the prior allegations of this Complaint, as if fully set forth herein.

147. Under the terms of the Offer Letter, Macchio was due a bonus payment of $25,000 no later than December 31, 2018.

148. Prior to December 31, 2018, Macchio had satisfied all conditions precedent to obtain this bonus.

149. Bertil Roos failed to pay Macchio's bonus on or before December 31, 2018.

150. Bertil Roos offered no valid justification or excuse for failing to pay Macchio's bonus.

151. No good faith dispute existed over Macchio's entitlement to this bonus.

152. Under the Pennsylvania Wage Payment and Collection Law ("WPCL", this bonus is considered "wages," as defined by the act. *See* 43 P.S. 206.1 et seq.

153. The WPCL imposes liquidated damages for wages remaining unpaid for thirty or more days beyond the date that such wages are due and owing to an employee.

154. Bertil Roos failed to pay Macchio's bonus for more than 30 days beyond the date that it was due and owing to Macchio.

155. As such, Macchio is entitled to liquidated damages of 25% of the amount of unpaid wages, or $6,250.

156. Macchio is also entitled to recover his reasonable attorneys' fees in pursuing satisfaction of his wage claim, as such fees are mandatory under the WPCL.

## REQUEST FOR RELIEF

WHEREFORE, having alleged this Complaint against Defendants, Macchio prays that the Court award the following relief:

(a) A declaration that the restrictive covenants in the Operating Agreement and the Offer Letter are unenforceable and unnecessary to protect Bertil Roos's legitimate interests, and that Macchio is free to engage in competitive employment.

(b) Judgment against Defendants for damages in an amount to be proven at trial, including actual, punitive and statutory damages;

(c) Attorneys' fees, costs and such other and further relief as this Court deems just and equitable; and

(d) Plaintiff demands a trial by jury on all claims on which he is so entitled.

Respectfully submitted,

COZEN O'CONNOR

Dated: August 23, 2018

Jonathan R. Cavalier (PA 206063)
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Phone: (215) 665-2776
jcavalier@cozen.com

Counsel for Plaintiff
Dennis Macchio